**Not for Publication**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN IMMIGRATION LAWYERS ASSOCIATION, NEW JERSEY CHAPTER, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, *et al.*, <br><br> Defendants. | Civil Action No. 20-9748 <br><br> OPINION |

**VAZQUEZ, DISTRICT JUDGE**

In this case, Plaintiffs seek to stop Defendants from compelling in-person appearances at the Newark Immigration Court and require the Newark Immigration Court to provide attorneys with the option to appear remotely by video conference because of the ongoing COVID-19 pandemic.[1] Plaintiffs initiated this matter by filing a complaint, D.E. 1, and an Emergency Motion for a Preliminary Injunction, D.E. 6. Defendants now contend that the case is moot because the Newark Immigration Court has implemented video conferencing technology that allows participants to connect remotely. D.E. 31. The Court reviewed the parties' submissions in support and in opposition to the motion,[2] and held telephone conferences regarding Plaintiffs' motion on

---

[1] COVID-19 is the name assigned by the World Health Organization to the disease caused by a novel coronavirus, SARS-CoV-2. Am. Compl. ¶ 20, D.E. 23. "On March 11, 2020 the World Health Organization [ ] declared COVID-19 a global 'pandemic.'" *Id.*

[2] For purposes of this Opinion, Plaintiffs' brief in support of their motion, D.E. 6-1, is referred to as "Plfs. Br.", Defendants' brief in opposition, D.E. 13, is referred to as "Defs. Opp."; and Plaintiffs' reply brief, D.E. 15, is referred to as "Plfs. Reply." The parties also filed a series of letters addressing the mootness issue at D.E. 31, 32, 35, and 36.

September 3, 2020 and October 8, 2020.  For the reasons stated below, Plaintiffs' motion is **DENIED without prejudice**.

  I.  **FACTUAL AND PROCEDURAL BACKGROUND**

As the parties are familiar with this matter, the Court does not provide a detailed factual background.  Instead, the Court recounts the key relevant facts here, and additional facts are discussed in the Analysis section below.

On June 24, 2020, in the midst of the ongoing COVID-19 pandemic, Defendant the Executive Office for Immigration Review ("EOIR") announced via Twitter that the Newark Immigration Court would resume hearings in non-detained cases on July 13, 2020.  Am. Compl. ¶ 39.  Then on July 8, 2020, the EOIR issued a "Notice" explaining that the Newark Immigration Court, among others, would reopen on July 13, 2020 for master calendar hearings and merits hearings in non-detained cases.  *Id.* ¶ 41.  On June 19, 2020, Defendant Assistant Chief Immigration Judge David Cheng issued a standing order for the Newark Immigration Court that addressed telephonic appearances for master calendar and merits hearings.  Pursuant to the standing order, all master calendar hearings for represented respondents were converted to telephone conferences, and respondents were permitted to file a motion to proceed with merits hearings telephonically, subject to a waiver of certain rights and individual judges' discretion.  *Id.* ¶ 39.  Plaintiffs[3] allege that since the Newark Immigration Court reopened, immigration judges have arbitrarily refused to postpone in-person hearings despite timely requests to adjourn due to concerns about COVID-19.  *See, e.g.*, *id.* ¶ 42.

---

[3] Plaintiffs in this matter are the American Immigration Lawyers Association, New Jersey Chapter ("NJ-AILA"), whose members regularly practice in the Newark Immigration Court, and several individual attorneys who also regularly appear at the Newark Immigration Court (hereinafter, the "Individual Attorney Plaintiffs").  Am. Compl. ¶¶ 7-11.

- 2 -

Plaintiffs contend that Defendants' decision to hold in-person hearings in the midst of the pandemic needlessly forces Plaintiffs to risk their health, and the health of their families and communities, in order to continue representing their clients.  In addition, certain Individual Attorney Plaintiffs have been threatened with disciplinary sanctions if they failed to appear for an in-person proceeding since the reopening.  *Id.* ¶ 44.  Plaintiffs add that their health risks are exacerbated by the EOIR's failure to ensure safe practices at the Newark Immigration Court, such as implementing screening procedures when entering the building, enforcing a face mask policy, or ensuring social distancing.  *See* Declaration of Monica Kazemi ¶¶ 3-7, Aug. 5, 2020, D.E. 6-7.

Plaintiffs filed suit on July 31, 2020, alleging that Defendants' actions constitute arbitrary and capricious agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and violate Plaintiffs' Fifth Amendment Substantive Due Process rights.  Plaintiffs primarily seek two forms of relief: (1) to enjoin Defendants from requiring attorneys to appear at the Newark Immigration Court for in-person proceedings during the COVID-19 pandemic; and (2) for the Newark Immigration Court to provide a remote video conferencing option in lieu of in-person proceedings.  D.E. 1.  On August 7, 2020, Plaintiffs filed an emergency motion for a preliminary injunction.  D.E. 6.  On September 3, 2020, this Court held a telephone conference with the parties to address Plaintiffs' motion.  The Court did not grant Plaintiffs' request for an injunction at that time, and subsequently entered an Order requiring that Defendants provide additional information to inform the Court's decision.  D.E. 21.

Defendants requested an extension of time to respond to the Court's Order, D.E. 29, which was granted by this Court, D.E. 30.[4]  Before the new deadline, Defendants filed a letter explaining

---

[4] On September 15, 2020, Plaintiffs filed the Amended Complaint, which is largely the same as Plaintiffs' initial pleading but adds a new Individual Attorney Plaintiff, John Perez.  The Amended Complaint contains allegations that pertain to Mr. Perez, specifically, that his request for an

that the Newark Immigration Court started using remote videoconferencing technology and therefore, this matter should be dismissed as moot. D.E. 31, 36. Plaintiffs do not refute the fact that certain proceedings have occurred via remote videoconferencing technology but do not believe that the new videoconferencing option moots their claims. D.E. 32, 35. As a result, the Court held an additional telephone conference as to the mootness issue on October 8, 2020. D.E. 38. As discussed below, the Court does not find that this matter is mooted by Defendants' implementation of remote videoconferencing. Accordingly, the Court focuses its analysis on Plaintiffs' motion for a preliminary injunction.

## II. ANALYSIS

Defendants raise a number of threshold issues that the Court must first discuss before it can address Plaintiffs' claims. As discussed below, the Court rejects all of Defendants' arguments that would have prevented the Court from reaching the true merits of this matter.

### 1. Subject Matter Jurisdiction

Defendants focus much of their argument on this Court's jurisdiction to hear the matter, arguing that the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") and the REAL ID Act of 2005, deprive this Court of jurisdiction. Defs. Opp. at 21-27. Section 242(b)(9) provides as follows:

> With respect to review of an order of removal under subsection (a)(1) . . . [j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

---

adjournment was denied, such that Plaintiffs sought an order from the Court adjourning Mr. Perez's impending hearing. Am. Compl. ¶ 47. Defendants filed a letter later in the afternoon on September 15 representing that Mr. Perez's adjournment request would be granted. Consequently, the Court determined that Plaintiffs' request was moot. D.E. 28.

8 U.S.C. § 1252(b)(9).  Moreover, "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order entered or issued under any provision of this chapter[.]"  8 U.S.C. § 1252(a)(5).  Section 242(g) also states that

> no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The Court finds that the foregoing provisions do not deprive it of jurisdiction to hear this matter.  The statutes concern removal proceedings but the Newark Immigration Court's docket is not limited to such matters.  Declaration of David Chen ("Chen Decl.") ¶ 7, Aug. 25, 2020, D.E. 13-1 (explaining that "[t]he most common type of case" are removal proceedings).  Accordingly, Defendants' argument does not even apply to all proceedings before the Newark Immigration Court.

Critically, Plaintiffs are attorneys, not aliens, and are not seeking review of an order of removal or asserting claims on any alien's behalf.  In fact, Plaintiffs point out that the pandemic can put their personal interests (avoiding infection) at odds with their professional obligations (accompanying a client who insists on an in-person hearing).  Defendants cite no legal authority for their position, nor could the Court locate any.  Thus, the jurisdictional requirements of Section 242 do not apply to the claims asserted here.[5]

---

[5] The Court, frankly, finds Defendants' jurisdictional arguments to be somewhat inane.  Taking Defendants' argument to its logical extreme, an immigration judge could force an attorney to attend an in-person proceeding even if the evidence definitively showed that all persons in the courtroom were infected, were not wearing masks, and were not keeping a safe distance.  And this Court would have no authority to hear the matter so long as it was a removal proceeding.  But even assuming that Plaintiffs' claims for a reasonably safe environment "arise from" an aliens' removal

- 5 -

Defendants also argue that Section 242(f) prevents the Court from granting Plaintiffs' requested relief. Defs. Opp. at 28-30. Section 242(f)(1) reads as follows:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions [Sections 1221-1232] other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). Section 242(f)(1) is a ban on injunctive relief "against the operation of §§ 1221-1231." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999); *see also Ali v. Barr*, --- F. Supp. 3d ---, 2020 WL 2986692, at *6 (S.D.N.Y. June 3, 2020) ("Section 1292(f)(1) is unambiguous: a district court shall not have jurisdiction to issue an injunction of general applicability that would interfere with the operation of certain [Immigration and Nationality Act] provisions.").[6] Here, Defendants argue that an injunction requiring video

---

proceedings as argued by Defendants, Section 242 would not divest this Court of jurisdiction. The Third Circuit recently concluded that "now-or-never" claims do not fall within the ambit of Section 1252(b)(9). *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (concluding that § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order or removal"). Under Defendants' interpretation of Section 242, Plaintiffs can only assert their claims after the Board of Immigration Appeals enters a final order of removal. But by that time, any judicial review would be meaningless for an attorney who was forced to attend an in-person hearing and contracted COVID-19. Plaintiffs' claims cannot be addressed through the available administrative process and are therefore "collateral to" the removal proceedings. Section 1292(b)(9), therefore, does not bar this matter. *Id.* (noting that "the point of the provision is to channel claims into a single petition for review, not to bar claims that do not fit within that process" (citing *Aguilar v. U.S. ICE*, 510 F.3d 1, 11 (1st Cir. 2007)). Of course, Defendants can argue that the plaintiffs in *E.O.H.C.* were aliens rather than attorneys – but that is precisely the point. The statutes are not aimed at the personal health and safety of counsel.

[6] In *Ali*, the plaintiffs sought an injunction prohibiting the defendants from enforcing filing deadlines or taking adverse actions against a specific group of aliens for their failure or inability to comply with deadlines due to the COVID-19 pandemic. The court in *Ali* determined that the plaintiffs were seeking injunctive relief that was not individualized, in violation of Section 1292(f)(1). *Ali*, 2020 WL 2986692, at *6.

conferencing would limit the immigration judges' independent discretion to regulate removal proceedings before them, in violation of Sections 1229a and 1229. Defs. Opp. at 29. But Plaintiffs do not seek to stop hearings from occurring or otherwise restrain proceedings.[7] Instead, they are simply seeking an order allowing non-detained hearings to proceed via remote video conferencing. An injunction would simply impact the vehicle through which a hearing takes place and does not inhibit a judge's ability to adjudicate any matters before him or her. And critically, the law authorizes removal proceedings to proceed via video conferencing. 8 U.S.C. § 1229a(2)(A)(iii); *accord* 8 C.F.R. § 1003.25(c) ("An Immigration Judge may conduct hearings through video conference to the same extent as he or she may conduct hearings in person."). Thus, Section 242(f) does not divest this Court of jurisdiction to enter injunctive relief.

Finally, Defendants maintain that Section 242(a)(2)(B)(ii) also deprives this Court of jurisdiction. Defs. Opp. at 30-31. Pursuant to that subsection, "no court shall have jurisdiction to review" any decision or action "in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). But this "jurisdiction-stripping language applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." *Bekhit v. Attorney Gen. of U.S.*, 239 F. App'x 761, 766-67 (3d Cir. 2007) (quoting *Alaka v. Attorney Gen.*, 456 F.3d 88, 95 (3d Cir. 2006)).

In this instance, Defendants argue that this Court lacks jurisdiction under this Section 242(a)(2)(B)(ii) because immigration judges are vested with authority to regulate the course of the

---

[7] The Court realizes that Plaintiffs also seek an injunction against in-person proceedings. For the reasons stated below, the Court denies this request based on the evidence. While the Court could envision a scenario in which all in-person proceedings should be stopped (for instance, asbestos exposure) until remediation can be completed, the record does not reflect such an extreme situation.

proceedings before them, Defs. Opp. at 31 (citing 8 C.F.R. § 1240.1(c)), and immigration judges are designees of the Attorney General. *Id.* As a result, Defendants continue, an immigration judge's decision as to the manner of the proceeding pursuant to 8 U.S.C. § 1229a(b)(2)(A) is unreviewable. None of the statutes or regulations at issue here grant exclusive discretionary authority to the Attorney General. Accordingly, Section 242(a)(2)(B)(ii) does not strip this Court of jurisdiction to review an immigration judge's decision with respect to the time and manner of removal proceedings.

### 2. Standing

Next, Defendants argue that Plaintiffs lack standing to assert their claims. As for the Individual Attorney Plaintiffs, Defendants maintain that each Individual Attorney Plaintiff lacks standing because they do not have any upcoming court appearances. Thus, Defendants continue, the Individual Attorney Plaintiffs do not allege an actual case or controversy. Defs. Opp. at 33. The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2. To meet the case-or-controversy requirement, a plaintiff must show that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted). To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358–59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)). An injury in fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Importantly, "[a] party facing prospective injury has standing to sue where the threatened injury is real, immediate,

and direct.'" *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 361 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)); *see also Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (explaining that a future injury "must be certainly impending and process with a high degree of immediacy").

Defendants argument stems from the fact that since the Complaint was first filed, the Individual Attorney Plaintiffs' in-court proceedings have been largely been adjourned. Thus, Defendants continue, Plaintiffs' claims are now moot. Defs. Opp. at 33. But Defendants conflate standing and mootness, which "are two distinct justiciability doctrines." *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 475-76 (3d Cir. 2016). Standing ensures that a plaintiff has an appropriate interest to initiate a case, while mootness "ensures that this interest 'continues throughout' the duration of the case." *Id.* at 476. Here, the Individual Attorney Plaintiffs had standing to assert their claims when the Complaint was filed. For example, Plaintiffs Trinidad and O'Neill had an in-person hearing scheduled for August 3, 2020, and the immigration judge warned these Plaintiffs that they could face disciplinary sanctions if they failed to appear. Am. Compl. ¶¶ 43-44. Plaintiff DiRaimondo had a hearing scheduled for August 24, 2020, *id.* ¶ 46, and Plaintiff Perez had a hearing scheduled for September 16, 2020, *id.* ¶ 47. The fact that these hearings have all been adjourned does not mean that the Individual Attorney Plaintiffs lacked standing when the Complaint was first filed. *See Hartnett v. Pa. State Educ. Assoc.*, 963 F.3d 301, 305 (3d Cir. 2020) ("[O]nce the plaintiff shows standing at the outset, she need not keep doing so through the lawsuit."). Moreover, the Individual Attorney Plaintiffs also have hearings scheduled in November and December. *See, e.g.*, Supplemental Declaration of Michael DiRaimondo ¶¶ 3-4, Sept. 1, 2020, D.E. 15-2. These future dates are sufficient to establish a real and immediate threat of future injury. Consequently, the Individual Attorney Plaintiffs have

standing to assert their claims.[8]

The NJ-AILA also has standing. An association may assert claims on its members' behalf "when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Franco v. Conn. Gen. Life Ins. Co.*, 647 F. App'x 76, 82 (3d Cir. 2016) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977)). Defendants maintain that the NJ-AILA lacks associational standing because none of the Individual Attorney Plaintiffs have standing. Defs. Opp. at 36. As discussed, the Individual Attorney Plaintiffs do have standing as a result of their future hearings in November and December. Accordingly, the NJ-AILA also has standing.

Finally, Defendants argue that the NJ-AILA lacks prudential standing because it is not within the "zone of interests" protected by the Immigration and Nationality Act ("INA"). The APA "grants standing to a person 'aggrieved by agency action within the meaning of a relevant statute,'" which is referred to as the statute's zone of interest. *Clark v. Sec. Indus. Ass'n*, 479 U.S. 388, 394 (1987) (quoting *Assoc. of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). But the zone of interest test "is not meant to be especially demanding," and "forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (quoting *Clark*, 479 U.S. at 399)). Here, the INA governs attorneys who represent aliens

---

[8] As discussed, Defendants contend that Plaintiffs' claims are moot because hearings have been rescheduled for 2021 or adjourned with no new date. Defs. Opp. at 33-34. While this may render certain individual claims as to particular proceedings moot, it does not negate the fact that the Individual Attorney Plaintiffs also have certain in-person hearings scheduled to occur in the near future.

in removal proceedings. *See, e.g.*, 8 C.F.R. § 1003.102 (addressing appropriate grounds to impose disciplinary sanctions for attorneys who represent aliens in removal proceedings). Accordingly, immigration attorneys, such as the Individual Attorney Plaintiffs, fall within the zone of interest of the INA, and the NJ-ALIA, whose members include the Individual Attorney Plaintiffs who represent aliens in removal proceedings, has prudential standing.

### 3. Preliminary Injunction

Turning to the merits of Plaintiffs' claims, injunctions are governed by Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1. A preliminary injunction is "extraordinary" relief. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). Injunctive relief may only be granted when a party demonstrates that it has a reasonable probability of success on the merits, it will suffer immediate and irreparable harm if the injunction does not issue, the grant of preliminary relief will not result in greater harm to the nonmoving party, and the injunctive relief is in the public interest. *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012) (citing *Crissman v. Dower Down Entm't Inc.*, 239 F. 3d 357, 364 (3d Cir. 2001)). A court must balance the four factors, provided that the party seeking the injunction demonstrates that it can satisfy the first two factors. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). In doing so, the court must "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* In addition, if granting a mandatory injunction, or one that alters the status quo, the party seeking the injunction must satisfy a heightened standard. Accordingly, such plaintiffs must "show a substantial likelihood of success on the merits and that their 'right to relief [is] indisputably clear.'" *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *Trinity Indust., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)).

Plaintiffs seek the following relief (in addition to fees and costs): (1) a declaration that "Defendants' decisions to compel attorneys to appear at the Newark Immigration Court for in-person proceedings in non-detained cases during the COVID-19 pandemic, without providing an option to appear by videoconference," violates the APA; (2) a similar declaration as to the Fifth Amendment Due Process Clause; (3) an order "[e]njoining Defendants from compelling attorneys to appear at the Newark Immigration Court for in-person proceedings;" and (4) an order "[c]ompelling Defendants to provide attorneys with the option to appear for hearings at the Newark Immigration Court by videoconference[.]" Am. Compl. at 30-31, D.E. 23.

Plaintiffs bring suit under the APA, which permits courts to review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. A reviewing court under the APA can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original); *see also* 5 U.S.C. § 701(a)(2) (stating that the APA does not apply where "agency action is committed to agency discretion by law"). Here, Plaintiffs fail to identify any action that Defendants were required to take with respect to how to manage the Newark Immigration Court's docket during a global pandemic. Defendants maintain that by regulation, immigration judges "have independent discretion to regulate the course of removal proceedings." Chen Decl. ¶ 12 (citing 8 C.F.R. § 1240.1(c)); *see also* 8 C.F.R. § 1003.29 ("The Immigration Judge may grant a motion for continuance for good cause shown."). As a result, Plaintiffs fail to establish a substantial likelihood of success on the merits for their APA claim.

As for Plaintiffs' Fifth Amendment state created danger claim, Plaintiffs notably fail to

address whether this Court can enjoin[9] agency decisions as a remedy for a state created danger violation. As noted, immigration judges have legal authority to manage their cases. To assert a state created danger claim, a plaintiff must establish that

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's action, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Kaucher v. County of Bucks*, 455 F.3d 418, 431 (3d Cir. 2006) (quoting *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006)). With respect to the second element, when a state actor "has time to make an 'unhurried judgment,' a plaintiff need only allege facts supporting an inference that the official acted with a mental state of 'deliberate indifference.'" *Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (quoting *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006) (*per curiam*)).

Since the Complaint was filed in this matter, the Newark Immigration Court began offering remote videoconferencing via WebEx. *See* Supplemental Declaration of David Cheng ("Supp. Cheng Decl.") ¶¶ 5-6, Oct. 7, 2020, D.E. 36-1. As of September 29, 2020, WebEx hearings are now available to all parties, and as long as each participant has a device with access to the Internet, participants, including attorneys and their clients, do not need to be in the same room to remotely participate in a hearing. *Id.* ¶¶ 7, 10. To schedule a WebEx hearing, a party must file a motion in

---

[9] The Court notes that each case that Plaintiffs rely upon in arguing that they show success on the merits for the Fifth Amendment count involves claims for damages.

advance of the hearing. Whether to grant the motion for a remote proceeding, however, is subject to each individual immigration judge's discretion. *Id.* ¶ 8. If an immigration judge grants a request to proceed via WebEx, the court issues a standard order with instructions and a link to access the WebEx hearing and a staff member also sends an email to the parties that contains the link. *Id.* ¶ 9, Ex. A. But because some respondents and attorneys may prefer an in-person hearing, the Chief Judge of the Newark Immigration Court "do[es] not intend to issue a mandatory or blanket standard for the use of WebEx in all hearings." *Id.* ¶ 8. Since the remote video conferencing platform roll out, certain Plaintiffs in this matter have been notified that their scheduled hearings could proceed via WebEx after filing a motion to adjourn due to COVID-19 concerns and these Plaintiffs subsequently participated in their hearings via WebEx. *See, e.g.*, Supplemental Declaration of John J. Perez ("Supp. Perez Decl.") ¶¶ 3, 11, Oct. 4, 2020, D.E. 32-1. Plaintiffs have not identified a request to proceed via WebEx that has been denied or an instance in which a Plaintiff or NJ-AILA member has been required to attend an in-person proceeding after consenting to a videoconferencing proceeding.

The Newark Immigration Court implemented this technology before the Court issued a ruling on the matter. Because Defendants voluntarily implemented a remote videoconferencing platform, Plaintiffs are unlikely to establish that Defendants acted with deliberate indifference. Plaintiffs, therefore, fail to establish a substantial likelihood of success on the merits for their state created danger claim. Moreover, given the newly implemented technology, Plaintiffs also cannot establish imminent irreparable harm for either claim.

Although Plaintiffs appear to have obtained the exact relief they initially sought without court intervention, Plaintiffs seek a "formal embodiment" of the remote videoconferencing plan

because the EOIR's rollout "has been uneven."[10]  Plfs' Oct 5, 2020 Ltr. at 2, D.E. 32.  Plaintiffs argue that the "EOIR has not demonstrated a clear commitment to this process."  *Id.* at 4.  First, it is entirely understandable for hiccups to occur when a court, or any institution for that matter, rolls out new technology.  Such glitches are the norm, rather than the exception, and are not in itself evidence of any improper intent.  Moreover, Judge Chen represents that the Newark Immigration Court "will continue to work with EOIR's Office of Information Technology to troubleshoot and address any glitches or interruptions in the use of WebEx."  Supp. Chen Decl. ¶ 11.

As for Plaintiffs' concern about the lack of a formal policy, it also does not entitle them to the extraordinary remedy of injunctive relief.  In his Supplemental Declaration, Judge Chen states that the Newark Immigration Court will continue to troubleshoot and address problems with the WebEx platform, that immigration judges in Newark have reported that "WebEx is now a generally reliable method of conducting hearings," and provides a form order that is issued for WebEx hearings.  Supp. Chen Decl. ¶¶ 11, Ex. A.  The proactive steps by the Newark Immigration

---

[10] Plaintiffs also maintain that the Newark Immigration Court failed to ensure that remote video hearings are safe.  Plfs' Oct. 5, 2020 Ltr. at 2, 4.  By way of example, Plaintiffs contend that initially, attorneys were informed that they could not share the WebEx link with their clients, which would enable clients to access the hearing from a different remote location than their attorneys.  But Plaintiffs never asked for this relief in their Amended Complaint – they simply requested that the Newark Immigration Court implement remote videoconferencing.  Plaintiffs did not request that the videoconferencing permit the attorney and client to be at different locations.  Yet, even though not requested, the Newark Immigration Court accommodated Plaintiffs and permit the attorney and client to be at different remote locations; the attorney merely has to forward the web link to his/her client.  But more importantly, Plaintiffs' example of a continued safety risk, namely Mr. Perez's decision about where to meet with his client and his client's wife for a remote hearing, was Mr. Perez's personal choice.  It is obviously unfortunate that Mr. Perez tested positive for COVID-19 after the remote hearing, but the Newark Immigration Court did not require that Mr. Perez participate in the hearing in a 10x10 office with limited ventilation.  In addition, it is unclear if Mr. Perez's client or his client's wife tested positive for COVID-19; in fact, it is unclear if either has been tested.  As a result, the Court cannot infer that Mr. Perez contracted even COVID-19 from them or vice versa.

The Court notes that implying that the Newark Immigration Court caused Mr. Perez to become infected is a very serious allegation.  And, in light of the record, it is an unfair accusation.

Court negate a finding of imminent irreparable harm; and the videoconferencing option is now embodied in a standing order. There is no evidence that the Newark Immigration Court intends to prematurely discontinue its use of videoconferencing.

Plaintiffs also argue that an injunction is necessary because immigration judges have discretion to grant continuances, and "must make independent determinations as to whether there is 'good cause shown' to grant a continuance." Supp. Chen Decl. ¶ 13. Such discretion appears entirely appropriate. Indeed, the Court can easily envision circumstances in which an immigration judge would need to exercise such discretion and require an in-person hearing. For example, if an attorney or his/her client repeatedly fails to attend a scheduled videoconference, an immigration judge may be left with no reasonable alternative than an in-person hearing. The Court has no evidence that the judges of the Newark Immigration Court intend to use their discretion in an arbitrary or capricious manner.

In sum, the Newark Immigration Court appears committed to providing consenting attorneys and respondents with a remote videoconferencing option for the duration of the COVID-19 pandemic. Given this new technology, Plaintiffs' fail to establish immediate and irreparable harm, and are unlikely to establish deliberate indifference, which is necessary to demonstrate a substantial likelihood of success on the merits for their Fifth Amendment claim. However, given Plaintiffs' concerns, the Court will deny Plaintiffs' motion without prejudice and if, in Plaintiffs' view, circumstances arise that necessitate relief from this Court, Plaintiffs will be free to seek whatever relief that they deem to be appropriate at the time.[11]

---

[11] A case may be moot because of a defendant's voluntary cessation of the alleged wrongful conduct only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203 (1968)). Accordingly, "[w]hen a plaintiff seeks declaratory relief, a defendant

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' emergency motion for a preliminary injunction (D.E. 6) is **DENIED without prejudice**. An appropriate Order accompanies this Opinion.

Dated: October 16, 2020

                                                                              John Michael Vazquez, U.S.D.J

---

arguing mootness must show that there is no reasonable likelihood that a declaratory judgment would affect the parties' future conduct." *Hartnett v. Pa. State Educ. Assoc.*, 963 F.3d 301, 306 (3d Cir. 2020). Because the Court is expressly providing Plaintiffs with the opportunity to return to the Court if they believe it is necessary, the Court cannot conclude that this matter is now moot.

      The Court is also aware of the fluid nature of the pandemic – globally, nationally, and locally. Information concerning the pandemic has evolved; the CDC has revised its guidelines. At the same time, infection rates in certain states and municipalities have fluctuated. Unfortunately, New Jersey's infection numbers are currently on the rise again. But the Court cannot predict with any certainty the path that the pandemic will ultimately take. While the Court denies the request for declaratory relief, the Court recognizes the difficulty in tying such relief to an appropriate yardstick.